Filed 6/16/21  In re Coles CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re | F079172 |
| JAMEEL COLES | (Super. Ct. SUF23393A) |
| On Habeas Corpus. | |

### THE COURT*

APPEAL from the judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Stephen Greenberg, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Respondent.

-ooOoo-

---

\*        Before Hill, P.J., Detjen, J. and Peña, J.

**INTRODUCTION**

In 2000, a jury convicted petitioner Jameel Coles of first degree murder (Pen. Code,[1] § 187), with the special circumstances that the murder occurred during the commission of a robbery, kidnapping, and carjacking (§ 190.2, subd. (a)(17)(A), (B), (L)).[2] For this offense, he was sentenced to a term of life without the possibility of parole.

In 2019, petitioner filed a petition for resentencing pursuant to section 1170.95.[3] The court summarily denied the petition on the ground that petitioner was the actual killer or, alternatively, either acted with an intent to kill or was a major participant in the

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Petitioner also was convicted of additional offenses, as described below.

[3]     Petitioner filed his resentencing petition on a form petition for writ of habeas corpus, but made clear he was seeking relief pursuant to the procedure outlined in section 1170.95. The court addressed the resentencing petition pursuant to section 1170.95, but continued to caption the matter as a petition for a writ of habeas corpus. In his notice of appeal, petitioner stated he was appealing from "denial of SB1437/PC1170.95 petition."

In a noncapital case, a habeas petitioner cannot appeal from an order denying relief, but rather must file a new petition in a higher court. (§ 1506; *In re Reed* (1983) 33 Cal.3d 914, 918, fn. 2, overruled on another ground in *In re Alva* (2004) 33 Cal.4th 254, 264; *In re Hochberg* (1970) 2 Cal.3d 870, 875, disapproved on another ground in *In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 3; cf. § 1509.1; *Briggs v. Brown* (2017) 3 Cal.5th 808, 825.) However, an order granting or denying relief pursuant to section 1170.95 is appealable, pursuant to section 1237, subdivision (b), as an order after judgment affecting a party's substantial rights. (See *People v. Larios* (2019) 42 Cal.App.5th 956, 961, review granted Feb. 26, 2020, S259983 [an "order denying a petition for recall of sentence and resentencing pursuant to . . . section 1170.95 . . . is appealable pursuant to section 1237, subdivision (b), as an order after judgment affecting the substantial rights of the defendant"].)

Regardless of how the matter is titled, petitioner's claims are reviewable by us on the merits. The People do not contend otherwise but rather concede that the petition was "in effect" a petition for resentencing under section 1170.95. However, because the instant appeal is from an order styled as an order denying a petition for writ of habeas corpus, we maintain the single title format applicable to habeas corpus proceedings. (Cal. Style Manual (4th ed. 2000) § 6:32.)

underlying felony who acted with reckless indifference to human life, all disqualifying factors pursuant to section 1170.95, subdivision (a)(3).

Petitioner appeals from the court's denial of his petition. He asserts that his petition was facially sufficient to establish that he fell within the provisions of section 1170.95, and the court therefore was required to appoint counsel, request briefing, and issue an order to show cause. He also argues the court relied on an inadequate record to reach unsupported or inadequately supported findings.

We conclude that any error by the court in failing to appoint counsel or afford petitioner the other procedures outlined in section 1170.95, subdivision (c) was harmless because the special circumstance findings establish petitioner is ineligible for resentencing as a matter of law. In light of this determination, we do not address petitioner's contention that the court's factual findings are unsupported. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On March 22, 2000, a jury convicted petitioner of first degree murder (§ 187; count 1), with the special circumstances that the murder was committed during the commission of a robbery, kidnapping, and carjacking (§ 190.2, subd. (a)(17)(A), (B), (L)); kidnapping for robbery (§ 209, subd. (b); count 2); carjacking (§ 215; count 3) and robbery (§ 211; count 4).[4] On count 1, the court sentenced petitioner to a term of life without the possibility of parole. Sentence on the remaining counts was imposed and stayed pursuant to section 654.

---

[4]    The same jury found petitioner's codefendant, David Parker, guilty of the same offenses. Parker is not a party to this appeal.

3.

A.    **Direct Appeal**[5]

In petitioner's direct appeal, we summarized the trial evidence as follows:

"*I.    Prosecution Evidence*

"On the night of December 4, 1997, a California Highway Patrol officer stopped David Parker for driving 90 miles an hour on Highway 99 near Atwater.  Since he was driving a rented car on a suspended license and the renter was not in the car, officers impounded the car and gave him, his passengers, and their luggage a ride to a restaurant with a pay phone in the parking lot and a hotel across the street.  His passengers were [petitioner] and three female juveniles, Nailah W. (Nailah) (who later pled guilty in juvenile court to accessory to murder) and Janelle G. (Janelle) and Myan J. (Myan) (both of whom later pled guilty in juvenile court to first degree murder).

"A long-time friend of [the victim, Nathaniel Thompson] saw him and his van in the parking lot of the restaurant at that time.  Nailah heard [petitioner] and Parker talk about needing a ride.  Myan asked Thompson for a ride.  [Petitioner], Parker, Nailah, Janelle, and Myan all got into Thompson's van with their luggage.  As Thompson drove, Nailah heard [petitioner] and Parker whispering to each other that they had to 'get the man's van and ditch him somewhere.'

"After driving for a while, Thompson got off the freeway, stopped by a pay phone, opened the sliding side door, and helped everyone take the luggage out of the van.  While he was doing that, someone 'knocked [him] out' by hitting him in the head.  He fell halfway inside and halfway outside the van.  Parker said, 'Shit, I busted my fist.'

"[Petitioner] and Parker put Thompson into the van.  [Petitioner] sat down on top of him and pressed his knee into his back.  Myan helped hold him down.  As Parker drove, Thompson came to and pleaded for them to let him go.  'He said you can take my car or my van and my keys, money and keys, just let me go.'  Parker drove onto a side road and stopped the van.

"[Petitioner] and Parker dragged Thompson out of the van and beat and kicked him as he lay on the ground.  [Petitioner] or Janelle smothered

---

[5]    We previously took judicial notice of our nonpublished opinion in petitioner's direct appeal.  We quote from that opinion to provide context for the trial court's ruling.  However, our holding does not rely on the facts summarized in our prior opinion.

him with a pillow. [Petitioner] poured kerosene from a lantern onto his body. Myan struck a match to the kerosene and set his body on fire. A passerby found his burned body the next morning.

"Parker drove to Las Vegas, where the van was abandoned after Thompson's possessions were removed and the van was wiped down for fingerprints. Police who questioned Nailah on suspicion of prostitution later that month learned of the murder and found the van after taking statements first from her and then from [petitioner]. Police found Janelle's fingerprint on a window of the van. Inside [petitioner's] car, police found Thompson's cell phone and [petitioner's] and Parker's fingerprints.

"Other property missing from Thompson's body and van were credit cards and a gold chain. The cause of death was blunt force injury to the right side of the head and brain. The fatal skull fracture that caused the brain to hemorrhage was consistent with kicking the head, not with hitting the head with a fist. The second degree burns on the body were not a cause of death, as the burning occurred at the time of or after death.

"*II. Defense Evidence*

"When [petitioner] talked with Parker about stealing a car, he meant taking a car with a screwdriver as he did in his youth, not carjacking anyone. He was surprised when Parker hit Thompson in the head. Physically he could have walked away, but once people 'back home' found out about that he would have been in 'a lot of trouble.' He had a good idea he and Parker were going to keep the van. He helped Parker push Thompson back into the van and held him down while Parker drove.

"After Parker drove onto a side road and stopped the van, Thompson kicked [petitioner], who got upset and kicked him back four or five times. He kicked him in the chest but not in the head. Janelle and Myan kicked him, put a pillow on his face, and held him down until he stopped moving. He did not recall who got the lantern or who poured kerosene on him. He was surprised at 'everything that was going on.' " (*People v. Coles* (Feb. 21, 2002, F035860) [nonpub. opn.] (*Coles*).)

In our discussion of the issues on appeal, we summarized additional testimony as follows:

"At trial, Janelle testified she and Myan stayed inside the van while, outside the van, [petitioner] and Parker hit and kicked Thompson, whom [petitioner] smothered with a pillow. Myan testified neither she nor Janelle beat Thompson. After pleading guilty in juvenile court to accessory to

5.

murder, Nailah testified at trial that she watched Janelle and Myan kick Thompson, Myan take his gold chain from him, Janelle smother him with a pillow, and Myan light him on fire." (*Coles*, *supra*, F035860.)

We continued:

"Nailah testified that after [petitioner] and Parker planned to 'get the man's van and ditch him somewhere' [petitioner] and Parker beat Thompson and stole his van and [petitioner] poured kerosene from a lantern onto his body. [Petitioner] testified he did not douse his body but admitted kicking him, helping to put him back into the van, and holding him down while Parker drove and Thompson begged to be let go. [Petitioner] testified he had a 'pretty good idea' they were going to keep the van and drive to Las Vegas, where police found the van with Janelle's fingerprint on one of the windows and [petitioner's] car with Thompson's cell phone and [petitioner's] and Parker's fingerprints inside." (*Coles*, *supra*, F035860.)

We further explained:

"Evidence in the record supported the theory of an accomplice causing Thompson's death by an act in furtherance of the common design. Nailah testified she heard [petitioner] and Parker whispering to each other while riding in Thompson's van that 'they had to get the car.' Both she and [petitioner] testified that [petitioner] and Parker beat Thompson and stole his van. Naliah [*sic*] testified she saw Myan kick and rob Thompson and saw Janelle kick him and smother him with a pillow. On the basis of that evidence, CALJIC No. 8.26 [concerning first degree felony murder in pursuance of a conspiracy] properly permitted the jury to find [petitioner] guilty of murder." (*Coles*, *supra*, F035860.)

Ultimately, this court amended petitioner's sentence on counts 2 and 3, but otherwise affirmed the judgment. (*Coles*, *supra*, F035860.)

B.    **Resentencing Petition**

On January 7, 2019, petitioner filed a petition for writ of habeas corpus seeking resentencing pursuant to section 1170.95. Therein, petitioner stated that an information was filed against him that allowed him to be prosecuted under both a theory of felony murder and murder under the natural and probable consequences doctrine; he was convicted of first degree murder at trial; and he was not the actual killer, did not act with an intent to kill, and was not a major participant in the underlying felony or did not act

6.

with reckless indifference to human life in the course of the crime.  He attached as an exhibit a portion of this court's opinion in *Coles*, *supra*, F035860.[6]

On February 19, 2019, the People filed a letter brief opposing the petition, arguing petitioner was ineligible for resentencing because he acted with the intent to kill and was a major participant who acted with reckless indifference to human life, as evidenced by the jury's special circumstance findings.  As an exhibit to their letter brief, the People filed this court's entire opinion in *Coles*, *supra*, F035860.

On March 1, 2019, the court summarily denied the petition.  The court summarized the factual background from our opinion in *Coles*, *supra*, F035860, and stated:

> "The record is clear.  Petitioner was the actual killer.  In the alternative, he either, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of the murder in the first degree, or he was major participant who acted with reckless indifference to human life.

> "Accordingly, the petition is **DENIED**."

On April 4, 2019, petitioner filed a letter brief reply, in which he continued to assert his eligibility for resentencing.

On April 5, 2019, the court responded to petitioner's reply brief stating:

> "The court is in receipt of petitioner's reply brief in his motion pursuant to Penal Code section 1170.95.  The court will note it also received a brief from the District Attorney, which was served on petitioner.  Without reviewing the District Attorney's brief, the court summarily denied petitioner's motion on March 1, 2019.  The denial is based solely on the record, which conclusively demonstrates a lack of a prima facie case.  As such, the court will file petitioner's reply brief for record keeping but the ruling denying the motion remains in full effect."

---

[6]     In a letter sent to the trial court on February 18, 2019, petitioner requested various transcripts from his criminal trial.  However, it appears this letter was returned to petitioner for lacking a superior court case number.  A copy of the letter nonetheless was included in the record on appeal in the instant case.

This timely appeal followed.

## **DISCUSSION**

**I.**     **Senate Bill No. 1437 (2017-2018 Reg. Sess.) and Section 1170.95**

" 'Effective January 1, 2019, Senate Bill [No.] 1437 amended murder liability under the felony-murder and natural and probable consequences theories.' " (*People v. Daniel* (2020) 57 Cal.App.5th 666, 672, review granted Feb. 24, 2021, S266336 (*Daniel*).) The bill accomplished this task by adding three separate provisions to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) First, to amend the natural and probable consequences doctrine, " '[t]he bill redefined malice under section 188 to require that the principal acted with malice aforethought. Now, "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)' " (*Daniel*, at p. 672; accord, *Gentile*, at pp. 842-843.) Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."[7] (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, the bill "added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.)

"Section 1170.95 lays out a process for a person convicted of felony murder or murder under a natural and probable consequences theory to seek vacatur of his or her

---

[7]     Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *Daniel*, *supra*, 57 Cal.App.5th at p. 672, review granted.)

conviction and resentencing.  First, the person must file a petition with the trial court that sentenced the petitioner declaring, among other things, that the petitioner 'could not be convicted of first or second degree murder because of changes to Section 188 or 189.' (§ 1170.95, subd. (a)(3); see § 1170.95, subd. (b)(1)(A).)  Then, the trial court must 'review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of th[e] section.'  (§ 1170.95, subd. (c).)  If so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d)(1).)  At the hearing, the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'  (§ 1170.95, subd. (d)(3).)  'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.'  (*Ibid.*)"  (*Gentile*, *supra*, 10 Cal.5th at p. 853.)

"Since Senate Bill [No.] 1437 was adopted and its mechanism for retroactive application has come into play through the filing of section 1170.95 petitions, many questions have arisen about that process and percolated up through appeals from resentencing decisions."  (*People v. Duchine* (2021) 60 Cal.App.5th 798, 811, fn. omitted.)  Those questions pertain primarily to section 1170.95, subdivision (c) (hereinafter sometimes referred to as "subdivision (c)"), which "addresses the procedure by which a trial court determines whether the petitioner is entitled to an evidentiary hearing."  (*People v. Cooper* (2020) 54 Cal.App.5th 106, 114, review granted Nov. 10, 2020, S264684 (*Cooper*).)  Section 1170.95, subdivision (c) provides in full:

> "The court shall review the petition and determine if the petitioner has
> made a prima facie showing that the petitioner falls within the provisions of
> this section.  If the petitioner has requested counsel, the court shall appoint
> counsel to represent the petitioner.  The prosecutor shall file and serve a
> response within 60 days of service of the petition and the petitioner may
> file and serve a reply within 30 days after the prosecutor['s] response is
> served.  These deadlines shall be extended for good cause.  If the petitioner

9.

makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Courts of Appeal are divided on several questions arising under subdivision (c). Relevant here, the Courts of Appeal are split regarding when the right to counsel arises under subdivision (c). Our Supreme Court has granted review to decide this question. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598 (*Lewis*).) In the meantime, a court has held that the right to counsel attaches immediately upon the filing of a facially sufficient petition that includes all the information required under section 1170.95, subdivision (b). (*Daniel*, *supra*, 57 Cal.App.5th at p. 673, review granted; *Cooper*, *supra*, 54 Cal.App.5th at pp. 109, 114, review granted.) That court construed the first sentence of subdivision (c) to state a general rule, with the rest of the subdivision establishing a process for complying with that rule: " 'Appoint counsel, if requested. Wait for the prosecutor's required response and the petitioner's optional reply. If the petitioner makes a prima facie showing, issue an order to show cause.' " (*Cooper*, at p. 115.)

Other courts have read the two references to a "prima facie showing" in the first and fifth sentences of subdivision (c) as requiring two different prima facie reviews – one to determine whether the petitioner "falls within the provisions" of the statute and one to determine whether the petitioner is "entitled to relief" – with each review to occur at a different chronological point in time. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1140, review granted; see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328-333, review granted Mar. 18, 2020, S260493 (*Verdugo*).) Under this reading of the statute, courts have concluded that a petitioner is entitled to counsel (as well as the other procedures provided for under subd. (c)) only after the trial court determines the petitioner has made the threshold showing required to satisfy the first prima facie review. (*Lewis*, at p. 1140; *Verdugo*, at p. 332.)

Courts of Appeal also are divided on the question of whether a trial court may look beyond a facially sufficient petition to determine whether a defendant has made a prima facie showing that he or she falls within the provisions of the statute. Our Supreme Court also granted review to decide this question in *Lewis*, *supra*, 43 Cal.App.5th 1128. In the meantime, some courts have held that a trial court may examine the petition, as well as the court's own files, the record of conviction, or an appellate court opinion from the petitioner's direct appeal. (*Lewis*, at p. 1138, review granted; see *Verdugo*, *supra*, 44 Cal.App.5th at p. 333, review granted.) Another court has held that a trial court may not rely on the record of conviction to deny a facially sufficient petition, and instead may only rely on the record of conviction to deny a petition "*after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties." (*Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted; see *Cooper*, *supra*, 54 Cal.App.5th at pp. 125-126, review granted.)

## II. Petitioner is Ineligible for Resentencing

Petitioner contends the trial court erred by summarily denying his facially sufficient petition, rather than appointing counsel, requesting briefing, and issuing an order to show cause. He also contends the record before the trial court was inadequate and does not support the court's findings. We conclude we need not resolve whether the facially sufficient petition gave rise to petitioner's right to appointed counsel and other procedural rights under subdivision (c) because the error here, if any, was harmless. This is because the jury's special circumstance findings establish that petitioner is ineligible for resentencing as a matter of law. We therefore do not consider whether the trial court's factual findings are adequately supported by the record.

Section 189, as amended by Senate Bill No. 1437 (2017-2018 Reg. Sess.), now permits a felony-murder conviction only when specified facts relating to the defendant's individual culpability have been proved. Among such circumstances, a felony-murder conviction is permissible if the defendant was a major participant in the underlying

11.

felony and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2. (§ 189, subd. (e).) Here, the jury found true felony-murder special circumstances pursuant to section 190.2, subdivision (a)(17)(A), (B), and (L), which impose a sentence of death or life without the possibility of parole for a murder committed during the commission, or attempted commission, of, respectively, a robbery, kidnapping, and carjacking. (§ 190.2, subd. (a)(17)(A), (B), (L).) (*Coles, supra*, F035860.) To make such findings, the jury was required to find that petitioner acted "with reckless indifference to human life and as a major participant" in aiding or abetting the commission of the underlying felony. (§ 190.2, subd. (d); *People v. Gutierrez-Salazar* (2019) 38 Cal.App.5th 411, 419.) In other words, "[t]he language of the special circumstance tracks the language of Senate Bill [No.] 1437 and the new felony-murder statutes." (*Gutierrez-Salazar*, at p. 419.) Thus, by finding the special circumstances true, the jury made the requisite findings necessary to sustain a felony-murder conviction under the amended law.[8] Petitioner is therefore ineligible for resentencing under section 1170.95 as a matter of law, and he was not prejudiced by the trial court's failure to appoint counsel or afford petitioner the other procedures outlined in subdivision (c). (See

---

[8]   Petitioner does not argue it was impermissible for the trial court to consider his record of conviction or this court's opinion, only that the record was inadequate to demonstrate his ineligibility for resentencing as a matter of law. We acknowledge that the issue of whether the trial court may consider the record of conviction in determining whether a petitioner has made a prima facie showing of eligibility for relief under section 1170.95 is currently pending before our Supreme Court. (*Lewis, supra*, 43 Cal.App.5th 1128, review granted.) In the meantime, the Courts of Appeal appear to be in an agreement that, at the very least, the trial court may rely on the record of conviction to "deny a petition *after* deeming it facially sufficient, appointing counsel, and receiving briefing from the parties" (*Daniel, supra*, 57 Cal.App.5th at p. 677, review granted), particularly where the court's review of that record is "limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . ." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) We therefore consider the record of conviction in determining whether petitioner was prejudiced by the court's summary denial of his petition.

12.

*Daniel*, *supra*, 57 Cal.App.5th at p. 676, review granted [to show prejudice, the petitioner bears the burden of showing it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing]; see also *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Nonetheless, petitioner argues that the special circumstance finding, standing alone, is insufficient to render him ineligible for resentencing as a matter of law.  In support, he relies on *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), both decided more than 15 years after his conviction. "*Banks* and *Clark* 'clarified "what it means for an aiding and abetting defendant to be a 'major participant' in a crime who acted with a 'reckless indifference to human life.' " ' [Citation.]  *Banks* identified certain factors to consider in determining whether a defendant was a major participant; *Clark* identified factors to guide the determination of whether the defendant acted with reckless indifference to human life." (*People v. Gomez* (2020) 52 Cal.App.5th 1, 13, fn. 5, review granted Oct. 14, 2020, S264033 (*Gomez*).) Courts of Appeal are split on the question of whether a special circumstance finding entered prior to *Banks* and *Clark* renders a petitioner ineligible for section 1170.95 resentencing relief as a matter of law (see *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479 [collecting cases], review granted Jan. 27, 2021, S265854 (*Jones*)), and our Supreme Court has granted review to decide the issue (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606).

Courts which have held that a pre-*Banks* and *Clark* felony-murder special-circumstance finding bars section 1170.95 resentencing relief have reasoned that *Banks* and *Clark* merely clarified the law as it always was.  (*Jones*, *supra*, 56 Cal.App.5th at pp. 482, 484, review granted; accord, *People v. Nunez* (2020) 57 Cal.App.5th 78, 92, review granted Jan. 13, 2021, S265918; *People v. Allison* (2020) 55 Cal.App.5th 449, 458.)  These courts further note that our Supreme Court does not require juries to be instructed on the *Banks* and *Clark* clarifications.  "Rather, while CALCRIM No. 703 now

13.

includes *optional* language drawn from *Banks* and *Clark* regarding the factors a jury *may consider*, '[t]he bench notes to the instruction state that *Banks* "stopped short of holding that the court has a sua sponte duty to instruct on those factors," and *Clark* "did not hold that the court has a sua sponte duty to instruct on those factors." ' " (*Nunez*, at pp. 92-93; accord, *Jones*, at p. 484; *Allison*, at pp. 458-459.)  Thus, these courts found "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez*, at p. 94.)

These courts have also held that an attack on a special circumstance finding in a section 1170.95 proceeding effectively constitutes a collateral attack on the judgment. (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142, review granted Oct. 14, 2020, S264284; *Gomez*, *supra*, 52 Cal.App.5th at p. 16, review granted.)  According to these courts, a petitioner who wishes to argue the special circumstance finding is invalid under current law must first seek to invalidate that finding through a petition for writ of habeas corpus before seeking resentencing pursuant to section 1170.95.  (*Galvan*, at p. 1142; *Gomez*, at p. 17; *Jones*, *supra*, 56 Cal.App.5th at p. 485, review granted.)  These courts reason that a contrary interpretation "would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it.  Such petitioners would be allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones*, at p. 485.)

On the other hand, courts that have found a special circumstance finding insufficient to render a petitioner ineligible for relief have reasoned that *Banks* and *Clark* "construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute." (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011; accord, *People v.*

*Harris* (2021) 60 Cal.App.5th 939, 958, review granted Apr. 28, 2021, S267802.)  Thus, these courts surmised that a petitioner with a pre-*Banks* and *Clark* special circumstance finding may have been convicted based on "conduct that is not prohibited by section 190.2 as currently understood."  (*Torres*, at p. 1180; accord, *Harris*, at p. 958; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835.)  To the extent the jury's finding on a felony-murder special circumstance is legally insufficient under *Banks* and *Clark*, it cannot refute a prima facie showing of entitlement to resentencing relief.  (*People v. Secrease* (2021) 63 Cal.App.5th 231, 256.)  Accordingly, in considering whether a petitioner is entitled to relief pursuant to section 1170.95, the trial court must first determine whether "the evidence presented at trial was sufficient to support the felony-murder special-circumstance finding under *Banks* and *Clark*."  (*Secrease*, at p. 264.)

We find more persuasive those cases holding that a special circumstance finding precludes relief as a matter of law.  *Banks* and *Clark* did not state a new rule of law.  Rather, they relied on the United States Supreme Court's decisions in *Enmund v. Florida* (1982) 458 U.S. 782 and *Tison v. Arizona* (1987) 481 U.S. 137 to clarify principles that had long been in existence at the time petitioner was convicted.  (See *In re Miller* (2017) 14 Cal.App.5th 960, 978; accord, *People v. Allison*, *supra*, 55 Cal.App.5th at p. 458; *Gomez*, *supra*, 52 Cal.App.5th at p. 13, fn. 5, review granted.)  *Enmund* prohibited felony-murder liability for a defendant that "did not commit the homicide, was not present when the killing took place, and did not participate in a plot or scheme to murder," and explained that, to be liable for felony murder, the aider and abettor must himself "kill, attempt to kill, or intend that a killing take place or that lethal force will be employed."  (*Enmund*, at pp. 795, 797.)  *Tison* held that, "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement."  (*Tison*, at pp. 151, 158.)  As *Banks* noted,

15.

this language from *Tison* was later codified by the California electorate in section 190.2, subdivision (d). (*Banks*, *supra*, 61 Cal.4th at p. 800.) To the extent *Banks* and *Clark* illuminated factors a fact finder might consider in determining whether a defendant was a major contributor who acted with reckless indifference to human life, they drew those factors from *Edmund* and *Tison*. (See *Banks*, at pp. 801, 803; see also *Clark*, *supra*, 63 Cal.4th at pp. 615, 618-623.) These principles existed when petitioner was convicted and, absent a determination on direct appeal or in habeas that the evidence was insufficient to support the jury's finding, there is no basis to conclude petitioner's jury applied different standards than those described in *Banks* and *Clark*.

Finally, we reject petitioner's assertion that the summary denial of his petition violated his constitutional right to due process. Due process is implicated when the state attempts to deprive a defendant of some liberty interest. (*Hewitt v. Helms* (1983) 459 U.S. 460, 466, abrogated on another point by *Sandin v. Conner* (1995) 515 U.S. 472, 483, fn. 5.) But petitioner is "categorically ineligible for relief under section 1170.95." (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 908, review granted Aug. 12, 2020, S263219.) He thus had no liberty interest in any of the procedures afforded by section 1170.95, subdivision (c). (See *Tarkington*, at p. 908.)

In sum, we conclude that petitioner is ineligible for relief as a matter of law, and any error in failing to appoint counsel or follow the procedures outlined in section 1170.95, subdivision (c) was harmless. (*Daniel*, *supra*, 57 Cal.App.5th at p. 677, review granted; accord, *People v. Law* (2020) 48 Cal.App.5th 811, 826, review granted July 8, 2020, S262490 [any error in failing to appoint counsel was harmless because counsel would not have been able to demonstrate petitioner was eligible for resentencing]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 675, review granted July 8, 2020, S262481 [any error in failing to appoint counsel was harmless because petitioner did not fall within the provisions of § 1170.95 as a matter of law].)

## **DISPOSITION**

The order is affirmed.